**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION**

| | | |
|---|---|---|
| **MONTEGO SHERRELL,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:21-cv-835-CWB** |
| | ) | |
| **KILOLO KIJAKAZI,** | ) | |
| **Acting Commissioner of** | ) | |
| **Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION AND ORDER**

**I.      Introduction and Administrative Proceedings**

Montego Sherrell ("Plaintiff") filed an application for Supplemental Security Income under Title XVI of the Social Security Act on February 21, 2020 wherein he alleged disability due to HIV (human immunodeficiency virus).  (Tr. 15-16, 48, 96-98, 309).[1,2]  Plaintiff's claim was denied at the initial level on July 24, 2020 and again after reconsideration on August 20, 2020. (Tr. 15, 96, 108, 123, 130).  Plaintiff then requested *de novo* review by an administrative law judge ("ALJ").  (Tr. 15, 134, 137).  The ALJ subsequently heard the case on June 10, 2021, at which time testimony was given by Plaintiff (Tr. 43, 47-59) and by a vocational expert (Tr. 59-63).  The

---

[1] References to pages in the transcript are denoted by the abbreviation "Tr."

[2] Plaintiff initially alleged a disability onset date of November 11, 2012.  (Tr. 15).  However, an individual cannot receive SSI for any period prior to the month in which he or she applied for SSI. *See* 20 C.F.R. § 416.330; 20 C.F.R. § 416.335 ("If you file an application after the month you first meet all the other requirements for eligibility, we cannot pay you for the month in which your application is filed or any months before that month.").  Thus, the relevant period in Plaintiff's case is from February 21, 2020, the date on which he applied for SSI, through the date of the ALJ's decision.  (Tr. 15-16, 29, 48, 96-97, 309).  *See* 20 C.F.R. §§ 416.330, 416.335; *Stone v. Comm'r of Soc. Sec. Admin.*, 596 F. App'x 878, 879 (11th Cir. 2015) ("For SSI claims, a claimant becomes eligible in the first month where she is both disabled and has an SSI application on file.").

ALJ took the matter under advisement and issued a written decision on July 8, 2021 that found

Plaintiff not disabled.  (Tr. 15-29).

The ALJ's written decision contained the following enumerated findings:

1.  The claimant has not engaged in substantial gainful activity since February 21, 2020, the application date (20 CFR 416.971 *et seq.*).

2.  The claimant has the following severe impairments: human immunodeficiency virus, cervical degenerative disc disease, hypertension, osteoarthritis, and obesity (20 CFR 416.920(c)).

3.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except for the following: he can frequently perform push and pull with his upper extremities (bilaterally). He can occasionally push and pull with the bilateral lower extremities (bilaterally). He can frequently handle, bilaterally. He can occasionally reach overhead, bilaterally. He can occasionally climb stairs, kneel, crouch, and crawl. He can frequently climb ramps and stoop. He can frequently balance, which is defined as the ability to maintain the body in a steady position. He can occasionally climb ladders and scaffolds. He can occasionally work around unprotected heights and hazardous moving mechanical parts. He can tolerate occasional exposure to extreme cold, extreme heat, and vibrations.

5.  The claimant is capable of performing past relevant work as a Cook as generally performed in the national economy. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 416.965).

6.  The claimant has not been under a disability, as defined in the Social Security Act, since February 21, 2020, the date the application was filed (20 CFR 416.920(f)).

(Tr. 18, 19, 20-21, 25, 28).  On November 17, 2021, the Appeals Council denied Plaintiff's request

for review of the ALJ's decision (Tr. 1-5), thereby rendering the ALJ's decision the final decision

of the Commissioner.  *See, e.g., Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

On appeal, Plaintiff asks the court to remand the case for a new hearing and further consideration. (Doc. 13 at p. 15). The court construes Plaintiff's supporting brief (Doc. 13) as a motion for summary judgment and the Commissioner's opposition brief (Doc. 14) as a competing motion for summary judgment. As contemplated by 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, the parties have consented to the exercise of full civil jurisdiction by a United States Magistrate Judge (Docs. 8, 9), and the undersigned finds that the case is ripe for review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Upon consideration of the parties' submissions, the relevant law, and the record as a whole, the court concludes that Plaintiff's motion for summary judgment is due to be denied, that the Commissioner's motion for summary judgment is due to be granted, and that the final decision is due to be affirmed.

## II.    Standard of Review and Regulatory Framework

The court's review of the Commissioner's decision is a limited one. Assuming the proper legal standards were applied by the ALJ, the court is required to treat the ALJ's findings of fact as conclusive so long as they are supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla," but less than a preponderance, "and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) ("Even if the evidence preponderates against the Commissioner's findings, [a reviewing court] must affirm if the decision reached is supported by substantial evidence.") (citations omitted). The court thus may reverse the ALJ's decision only if it is convinced that the decision was not supported by substantial evidence or that the proper legal standards were not applied. *See Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). Reversal is not warranted simply because the court itself would have reached a result contrary to that of the factfinder. *See*

*Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).  Despite the deferential nature of its review, however, the court must look beyond those parts of the record that support the decision, must view the record in its entirety, and must take account of evidence that detracts from the evidence relied on in the decision.  *See Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986); *see also Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

To qualify for disability benefits and establish entitlement for a period of disability, a person must be unable to:

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).[3]  To make such a determination, the ALJ employs a five-step sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520 & 416.920.

(1) Is the person presently unemployed?

(2) Is the person's impairment severe?

(3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1 [the Listing of Impairments]?

(4) Is the person unable to perform his or her former occupation?

(5) Is the person unable to perform any other work within the economy?

An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of "not disabled."

---

[3] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. § 423(d)(3).

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[4]

The burden of proof rests on the claimant through step four. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004); *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). A claimant establishes a *prima facie* case of a qualifying disability once he or she has carried the burden of proof from step one through step four. *Id.* At step five, the burden shifts to the Commissioner, who must then show that there are a significant number of jobs in the national economy that the claimant can perform. *Id.*

In order to assess the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"). *Phillips*, 357 F.3d at 1238-39. The RFC is what the claimant is still able to do despite the claimant's impairments and is based on all relevant medical and other evidence. *Id.* It may contain both exertional and nonexertional limitations. *Id.* at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy that the claimant can perform. *Id.* at 1239. To do so, the ALJ can use either the Medical Vocational Guidelines ("grids"), *see* 20 C.F.R. pt. 404 subpt. P, app. 2, or call a vocational expert ("VE"). *Id.* at 1239-40. The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor can independently limit the number of jobs realistically available to an individual, and combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id.* at 1240.

---

[4] *McDaniel* is an SSI case. Nonetheless, the same sequence applies to claims for disability insurance benefits brought under Title II. SSI cases arising under Title XVI therefore are appropriately cited as authority in Title II cases, and vice versa. *See, e.g., Ware v. Schweiker*, 651 F.2d 408, 412 (5th Cir. 1981); *Smith v. Comm'r of Soc. Sec.*, 486 F. App'x 874, 876 n.* (11th Cir. 2012) ("The definition of disability and the test used to determine whether a person has a disability is the same for claims seeking disability insurance benefits or supplemental security income.").

III.    **Issues on Appeal**

Plaintiff raises two issues on appeal: (1) whether additional evidence submitted to the Appeals Council warrants remand; and (2) whether the ALJ failed to properly consider the side effects of Plaintiff's medication.  (Doc. 13 at p. 1).

III.    **Discussion**

A.      **Additional Evidence Submitted to the Appeals Council**

Plaintiff argues that this case should be remanded because the Appeals Council improperly declined to remand the case based on additional evidence submitted after the ALJ's July 8, 2021 decision—specifically, eight pages of medical records from Valley Internal Medicine Associates regarding primary care visits occurring on July 20, 2021 and August 12, 2021.  (Doc. 13 at p. 7; Tr. 35-42).  The Commissioner contends that the Appeals Council properly determined that there was no reasonable probability that the additional evidence would have changed the outcome of the ALJ's decision. (Doc. 14 at p. 5).

The court "must consider evidence not submitted to the administrative law judge but considered by the Appeals Council when that court reviews the Commissioner's final decision denying Social Security benefits."  *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1258 (11th Cir. 2007).  Evidence is properly presented if it is "new [and] material," and it "relates to the period on or before the date of the hearing decision."  *See* 20 C.F.R. § 416.1470(a)(5); *Russell v. Astrue*, 742 F. Supp. 1355, 1382 (N.D. Ga. 2010) (citing *Smith v. Soc. Sec. Admin.*, 272 F. App'x 789, 800-02 (11th Cir. 2008)); *Washington v. Soc. Sec. Admin., Com'r*, 806 F.3d 1317, 1320 (11th Cir. 2015) ("[T]he Appeals Council 'must consider new, material, and chronologically relevant evidence' that the claimant submits.").  The Appeals Council will review a case "if the Appeals Council receives additional evidence that is new, material, and relates to the period on or

before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 416.1470(a)(5).[5] However, if the Appeals Council denies a request for review, it is "not required to provide a detailed discussion of the new evidence or an explanation as to why the claimant's new evidence would not change the ALJ's decision." *Douglas v. Comm'r of Soc. Sec.*, 764 F. App'x 862, 863 (11th Cir. 2019) (citing *Mitchell v. Comm'r of Soc. Sec. Admin.*, 771 F.3d 780, 784-85 (11th Cir. 2014)).

The Commissioner's internal policy provides guidance on the meaning of "new," "material," and "relates to" as used in the regulations. The Hearings, Appeals, and Litigation Law Manual ("HALLEX") explains that additional evidence "is new if it is not part of the claim(s) file as of the date of the hearing decision." HALLEX I-3-3-6(B)(2), 1993 WL 643129 (May 1, 2017). The HALLEX explains that additional evidence is "material" "if it is relevant, i.e., involves or is directly related to issues adjudicated by the ALJ," and that "[a]dditional evidence relates to the period on or before the date of the hearing decision if the evidence is dated on or before the date of the hearing decision, or the evidence post-dates the hearing decision but is reasonably related to the time period adjudicated in the hearing decision." *Id*. The HALLEX also explains that the Appeals Council "will evaluate the entire record along with the additional evidence to determine whether there is a reasonable probability that the additional evidence will change the outcome of the decision." *Id*., I-3-3-6(B)(3), 1993 WL 643129.

The ALJ thoroughly considered the whole record in finding that Plaintiff was not disabled under the Social Security regulations:

> Turning to the medical evidence, the record showed that the claimant was diagnosed with human immunodeficiency virus in January of 2006 (6F/78).

---

[5] In addition, the claimant must show "good cause" for not submitting the evidence to the ALJ. 20 C.F.R. § 416.1470(b). Here, the Appeals Council did not address the good cause requirement in denying review, and the parties do not raise it as an issue.

Subsequently, leading up to the application date, the claimant continued care with regular medication and follow-up visits for his human immunodeficiency virus (6F). Immediately prior to the application date, in January 2020, the claimant attended a routine follow-up visit to monitor his human immunodeficiency virus. At this time, it was noted that the claimant's CD4 was 44 and his viral load was not detected (6F/20-21, 24-25). Accordingly, the record indicated that he was consistent with taking his medication. As a result, his human immunodeficiency virus was generally stable with care (1F/4). By September 2020, he was noted to be without complications. His CD4 was noted to be 1636 and his viral load was undetectable (8F/2). Furthermore, more recent treatment notes showed that the claimant was continuing medications management and did not indicate difficulties with compliance with his medication regimen (10F/2; 11F/2, 4; 12F).

The evidence further showed that the claimant had a history of chronic pain in his neck. By the application date, in February 2020, the claimant reported increasing pain that radiated from his neck into his back and shoulders. An MRI was performed at this time, which showed that the claimant had a moderate sized old schmori's node with inferior endplate of the C6 with mild spondylytic changes. However, there was not disc protrusions or central canal stenosis (9F/11). Due to imaging, he was treated with medication for his symptoms of pain (10F/15). During follow-up care in June 2020, the claimant reported that he continued to have pain in his neck that was radiating into his arms, causing stiffness and swelling in his upper extremities (4F/4). As a result, his medications were continued (4F/5). By August 2020, he noted that his symptoms continued. On examination, it was noted that he had some diminished range of motion in his cervical spine. However, otherwise he had few other noted symptoms related to his neck and upper extremities (3F/7). In February 2021, the claimant reported that he had an increase in pain, numbness, and symptoms going into his upper extremities. As a result, he noted more difficulty with using his hands and upper extremities (10F/4). Subsequently, he reported chronic pain rated between five and eight out of ten, and received ongoing pain management (11F/2, 4).

In addition to chronic pain in his neck and upper extremities, the record indicated that the claimant was diagnosed with osteoarthritis in his knees. This impairment first appeared in March 2021 and was diagnosed during tele-health visits, without imaging or physical examination (11F/2). At this time, the claimant reported ongoing pain in his knees with instability and noted that his knees have given out (11F/4). As a result, he was prescribed medication, topical creams, and recommendations for knee braces (11F/4). However, the claimant testified that he was unable to obtain the braces for his knees. Although there was very limited treatment for his knees and no imaging or examinations, the undersigned considered this impairment when evaluating the claimant's impairments due to limitations relating to tele-health visits and difficulty with attending physical treatment. Therefore, the undersigned considered all of the claimant's severe impairments when evaluating his residual functional capacity.

Prior to the application date, the record showed that the claimant further had a history of high blood pressure, which was diagnosed as hypertension (9F/24-25). At times, the claimant reported symptoms of dizziness and losing his balance (9F/24). By January 2020, it was noted that his hypertension was stable with medication (5F/9). Follow-up notes showed that he generally continued care with regular medications for his high blood pressure (1F/3; 11F/2, 4; 12F).

Additionally, the record showed that the claimant was 66 inches tall and weighed 208 pounds in February 2020. His body mass index (BMI) was 33.57, indicating obesity (10F/22). Subsequent medical records showed that the claimant's BMI was consistently over 30 (4F/5; 10F/9; 12F/2). While the record does not reflect that his obesity causes any significant limitations on its own, it could exacerbate symptoms relating to his chronic pain, fatigue, limited range of motion, weakness, and decreased stamina. However, generally, the evidence showed that the claimant was treated conservatively, with recommendations for increased exercise and dieting (5F/8; 12F/4, 7). Furthermore, more invasive measures were not suggested or pursued. Thus, pursuant to SSR 19-2p, the residual functional capacity reflects the greatest degree of limitation the claimant experienced due to all of his impairments.

Generally, the record showed some support for the claimant's reported symptoms, though not to the extent alleged. The record showed an MRI noting some abnormalities in his neck. Vital testing showed that his blood pressure was occasionally outside the normal range. Additionally, his BMI exceeded the normal range. Additionally, he received record monitoring for his viral load relating to his human immunodeficiency virus. Finally, he was treated for increasing pain in his knees. However, throughout the record, the evidence illustrated that his impairments were generally stable with conservative care. Specifically, test results identified that his viral load and CD4 were managed with regular medication. Additionally, his blood pressure and chronic pain were also treated with medication management. In fact, the record showed little evidence of recurrent complications or flare-ups related to his impairments, which would require more invasive care with emergency room visits, long-term inpatient treatment, daily management with a home health aide, multiple specialists, and more aggressive medication regimens. In fact, the evidence suggested that the claimant was often stable and he was recommended to increase his level of physical activity, which would indicate the claimant was capable of performing activities in excess of his reported limitations.

***

(Tr. 22-23).

The ALJ also concluded that Plaintiff's daily activities showed that he played games on his phone, went outside and for walks, watched television, and volunteered at his local church. (Tr. 23, 258, 282, 285-86). The ALJ noted that Plaintiff originally reported that he looked after

9

his mother but testified that she helped him with everyday tasks.  (Tr. 23-24, 56, 282, 689).  The

ALJ further noted that Plaintiff performed some odd jobs, such as cutting grass and washing cars,

and that he was able to take care of his own personal care without assistance, although he

sometimes had difficulty getting up.  (Tr. 24, 282-84).  The ALJ stated that Plaintiff could prepare

simple meals, complete inside and outside chores, shop in stores, and that he was able to leave his

house on his own.  (Tr. 24, 282, 284, 286).

    As for opinion evidence, the ALJ found the following:

> The undersigned considered the opinion of the State agency medical consultants,
> Krishna Reddy, MD, and Victoria Hogan, MD (2A; 4A). In July 2020, Dr. Reddy
> opined that the claimant could perform[] light work. He could frequently climb
> ramps and stairs, but only occasionally climb ladders, ropes, and scaffolds. He can
> frequently balance, stoop, kneel, crouch, and crawl. He can frequently handle,
> bilaterally. He must avoid concentrated exposure to extreme heat, extreme cold,
> vibration, and hazards (2A). In August 2020, Dr. Hogan affirmed the opinion at the
> reconsideration level (4A). The undersigned finds these opinions to be partially
> persuasive. The consultants are experts in evaluating medical issues in disability
> claims under the Social Security Act, based on treating, consultative, or other
> sources, regarding the claimant's impairments; and are experts in evaluating
> restrictions and limitations regarding the guidelines in 20 CFR Sections 404.1520,
> 404.1526, 404.1529, 416.920, 416.926, 416.929, and SSR 16-3p. The consultants
> supported their opinions with citations to the medical evidence, with references to
> specific treatment notes (2A; 4A). However, following their opinions, the record
> was supplemented with 6 exhibits, totaling approximately 200 pages of evidence
> (doubling the medical evidence in the record). Furthermore, based on this evidence,
> the undersigned added additional limitations for treatment notes that were not
> contemplated during their review. Specifically, the claimant received a new
> diagnosis, osteoarthritis in his knees, which was generally consistent with his
> testimony at the hearing (Hearing Testimony; 11F). Furthermore, the record
> showed additional changes in his medication regimen, which would suggest some
> changes to his overall heath that were not reflected in the earlier opinions.
> Therefore, even though their opinions were somewhat supported, the opinions were
> inconsistent with more recently available evidence.

> The undersigned considered the opinion of the claimant's treating physician,
> Arvind Kamath, MD (7F). In February 2020, Dr. Kamath opined that the claimant
> was "unable to participate in any gainful employment due to physical and mental
> illness" (7F/2). The undersigned does not find this opinion to be persuasive. First,
> the opinion was not supported with any reference to the claimant's diagnoses,
> medical treatment, or physical observations that would support his finding. In fact,

he just mentioned that the claimant was unable to participate in work (7F/2). Furthermore, his opinion is not consistent with other opinions in the record. Specifically, this opinion was not confirmed with additional opinions in the record, nor was the opinion also made by other treatment/evaluating physicians with references to the record. Finally, the statement about the claimant ability to work refers to an opinion that is reserved for the Commissioner of Social Security. In accordance with 20 CFR 404.1520b(c), an opinion on whether an individual is disabled or meets a listing goes to an issue reserved for the Commissioner and therefore cannot be given special significance.

(Tr. 24-25).

Plaintiff submitted to the Appeals Council additional medical evidence that consisted of eight pages of medical records from Valley Internal Medicine Associates regarding primary care visits that occurred after the ALJ's decision.  (Tr. 35-42).  The records from Plaintiff's visit on July 20, 2021 reflect that Plaintiff's chief complaint was "for follow up of chronic conditions, chronic pain management 6/10."  (Tr. 35, 37).  The "History of Present Illness" stated:

> 1. Follow-up chronic condition; hyperlipidemia, hypertension, HIV, and GERD
> 2. Chronic pain; this patient is a 47-year-old male who presents for chronic opioid management. The patient is receiving opioids for severe neck and joint pain. Pain scores include a current pain level of 10/10, an average pain level of 7/10, a minimum pain level of 5/10 and a maximum pain level of 10/10. The patient describes the pain as aching. The pain is constant. The patient describes symptoms as unchanged. Symptoms are exacerbated by weight bearing, use of the extremity, lifting, bending, twisting and standing. Symptoms are relieved by rest and opioid analgesics.

(Tr. 35, 37).  Musculoskeletal examination showed "[d]iminished range of motion of cervical spine," and "[b]oth knees swollen and tender on palpation."  (Tr. 36, 38).  Review of Plaintiff's neurologic system revealed that Plaintiff had no headache, dizziness, syncope, unilateral weakness, ataxia, numbness, or tingling in the extremities, and review of his musculoskeletal system showed no muscle pain, back pain, joint pain, or stiffness.  (Tr. 35-37).  Plaintiff was assessed with cervical disc disorder at C5-C6 level with radiculopathy and was to be treated with "[i]ncreased Norco as directed-patient having debilitating pain."  (Tr. 35, 37).  Plaintiff was prescribed "Norco 10 mg-

325 mg oral tablet," one tablet to be taken orally twice per day.  (Tr. 35, 37).

The records from Plaintiff's visit on August 12, 2021 reflect that his chief complaint was "for evaluation of cysts of bilateral axilla ongoing several days."  (Tr. 39, 41).  Plaintiff was assessed with cellulitis.[6] (Tr. 39, 41).  In Plaintiff's "History of Present Illness," the medical record noted that Plaintiff was receiving opioids for back and joint pain, especially for knees and wrist pain, that Plaintiff's current level of pain was 7/10, his average pain level was 7/10, and that he had a minimum pain level of 5/10 and a maximum pain level of 8/10.  (Tr. 39, 41).  Plaintiff did not complain of headache, dizziness, syncope, unilateral weakness, ataxia, numbness, or tingling in the extremities, but complained of severe joint and back pain.  (Tr. 40-41).  Plaintiff's musculoskeletal examination showed diminished range of motion of the cervical and lumbar spine. (Tr. 40, 42).  Plaintiff's prescription for Norco remained unchanged from July 20, 2021.  (Tr. 39, 41).

The Appeals Council found that the medical records from Valley Internal Medicine dated July 20, 2021 through August 12, 2021 did "not show a reasonable probability that it would change the outcome of the decision."  (Tr. 2).  The Appeals Council stated that it found no reason to review the ALJ's decision and denied Plaintiff's request for review.  (Tr. 1).

Plaintiff argues that the additional evidence is non-cumulative, as each visit included a detailed physical examination on dates that were not contained in the previously submitted evidence and that the additional evidence showed an increase in pain medication and the

---

[6] "Cellulitis" "is a deep infection of the skin caused by bacteria.  It usually affects the arms and legs. It can also develop around the eyes, mouth, and anus, or on the belly.  Normal skin can be affected by cellulitis, but it usually happens after some type of injury causes a skin break, including trauma or surgery.  Once the skin breaks, bacteria can enter and cause infection." https://www.hopkinsmedicine.org/health/conditions-and-diseases/cellulitis (last viewed June 27, 2023)

development of a new impairment—cellulitis. (Doc. 13 at p. 8). Plaintiff argues that the additional evidence is material to the ALJ's credibility analysis as the records showed that his pain was "debilitating" due to the increasing of his Norco[7] prescription. (*Id*. at pp. 8-9). Lastly, Plaintiff argues that the Valley Internal Medicine Clinic notes were chronologically relevant as Valley Internal Medicine was Plaintiff's treating facility during the relevant period and that the clinic has unique insight into the nature and severity of his health impairments, resulting limitations, and course of treatment. (*Id*. at p. 10).

Plaintiff's submission to the Appeals Council of additional evidence of medical treatment occurring after the ALJ's decision is unavailing. Records from Valley Internal Medicine dated February 2, 2021 were cited in the ALJ's decision and showed that Plaintiff had chronic neck pain that was constant and worsening with associated symptoms of numbness and weakness in the fingers. (Tr. 22, 642). Plaintiff's past medical history showed ongoing cervical disorder at C5-C6 level with radiculopathy, HIV-1 infection, and chronic pain syndrome. (Tr. 642). Plaintiff rated the current pain at 8/10. (Tr. 642). The assessment plan called for the use of "Norco as directed." (Tr. 642). Plaintiff was prescribed to take "Norco 10mg-325 mg oral tablet," one tablet every six hours ("Q6hr"). (Tr. 642).

The ALJ also cited March 2021 and April 2021 records from Valley Internal Medicine that showed Plaintiff reported "chronic pain rated between five and eight out of ten, and received ongoing pain management." (Tr. 22, 680, 682). The records from March 3, 2021 stated that Plaintiff was receiving opioids for back and neck pain and that he presented for chronic opioid

---

[7] "Norco" contains a combination of acetaminophen and hydrocodone. Hydrocodone is an opioid pain medication whereas acetaminophen is a less potent pain reliever that increases the effects of hydrocodone. Norco is used to relieve moderate to moderately severe pain. https://www.drugs.com/norco.html (last viewed June 27, 2023)

management.  (Tr. 680).  According to this medical record, Plaintiff described the pain as constant, his symptoms as unchanged, and his symptoms as exacerbated by weight bearing, use of the extremity, lifting, bending, twisting, and standing.  (Tr. 680).  Plaintiff complained of muscle, back and neck pain, and of numbness, tingling, and weakness in his arms.  (Tr. 680).  The assessment plan called for the continuation of Norco, gabapentin, and diclofenac[8] as directed.  (Tr. 680).  Plaintiff's prescription for Norco continued at one 325-mg tablet every six hours.  (Tr. 680).

The ALJ noted that Plaintiff's April 2021 records demonstrated that in addition to chronic pain in his neck and upper extremities, the record indicated that Plaintiff was diagnosed with osteoarthritis in his knees and that he reported ongoing pain in his knees with instability and that his knees had given out.  (Tr. 22, 682).  The April 2021 records noted that Plaintiff was receiving opioids for back, knee, and neck pain, that associated symptoms included hand numbness and tingling, that his pain scores included a current pain level of 8/10, an average pain level of 5/10 and a maximum pain level of 10/10, and that his pain was constant and worsening.  (Tr. 682).  Plaintiff's prescription for Norco remained unchanged at one tablet by mouth every six hours.  (Tr. 682).

Based on the forgoing, the court finds that the additional evidence submitted to the Appeals Council is cumulative of the evidence considered by the ALJ, and none of it undercuts the substantial evidence supporting the ALJ's decision.  Nor did Plaintiff submit a doctor's opinion that contradicted or undermined the ALJ's findings.  Plaintiff's symptoms, complaints of pain, and use of Norco documented in the additional evidence were largely consistent with the records from

---

[8] Diclofenac is a nonsteroidal anti-inflammatory drug (NSAID) and works by reducing substances in the body that cause pain and inflammation.  Diclofenac is used to treat mild to moderate pain, or signs and symptoms of osteoarthritis or rheumatoid arthritis.
https://www.drugs.com/diclofenac.html (last viewed June 27, 2023)

Valley Internal Medicine Associates from February 2021, March 2021, and April 2021 that the ALJ considered. *See Griffin v. Comm'r of Soc. Sec.*, 723 F. App'x 855, 858-59 (11th Cir. 2018) ("The contents of the 2014 MRI report are similar to, and largely consistent with, other medical records Griffin submitted to the ALJ before November 22, 2013, including Dr. Barnett's 2012 MRI report. ... Thus, the new 2014 MRI report is cumulative to the extent that it is consistent with the previous medical records the ALJ already considered and thus, even if considered, it would not have changed the ALJ's decision."). Further, "[w]hile evidence of deterioration of a previously considered condition may subsequently entitle a claimant to benefit from a new application, it is not probative of whether the claimant was disabled during the relevant time period under review." *Id*. at 858; *see McClain v. Soc. Sec. Admin.*, 760 F. App'x 728, 732-33 (11th Cir. 2019) (psychologist's report did not relate back to the time period of the ALJ's decision when it reflected the claimant's cognitive skills declined in the interim).

Moreover, as to Plaintiff's diagnosis of cellulitis, the record before the ALJ did not include a diagnosis of cellulitis prior to the July 8, 2021 decision, and the August 2021 record indicated that the cellulitis began only "several days" before August 12, 2021. (Tr. 39, 41). Therefore, the cellulitis was a new condition that began after the ALJ's decision, and such evidence is not material. "Evidence of a new or worsening condition is not chronologically relevant to the period under review by the ALJ." *Griffin*, 723 F. App'x at 859 n.4 (citing HALLEX, I-3-3-6(B)(2), 1993 WL 643129 ("Common examples of evidence that is not related to the period on or before the date of the [ALJ's] decision include evidence that shows: ... A worsening of the condition or onset of a new condition after the date of the hearing decision.")); *see Ring v. Soc. Sec. Admin., Comm'r*, 728 F. App'x 966, 969 (11th Cir. 2018) (doctor's evaluation did not relate to the relevant time period when it reflected "the worsening of a condition or the onset of a new condition after

the date of the ALJ's decision").

Additionally, the court concludes that the evidence involving primary care visits occurring after the ALJ's decision and submitted by Plaintiff following the ALJ's decision is not chronologically relevant in that it does not relate back to the period before the ALJ's decision and does not contain any medical opinions[9] based on Plaintiff's medical records from the time period prior to the ALJ's decision. HALLEX provides that "[t]here are circumstances when evidence dated after the hearing decision relates to the period on or before the date of the hearing decision," but that "a statement may relate to the period on or before the date of the hearing decision when it postdates the decision but makes a direct reference to the time period adjudicated in the hearing decision." HALLEX, I-3-3-6(B)(2), 1993 WL 643129. Here, Plaintiff did not present any statements or opinions from any medical sources that related back to the period before the ALJ's decision.[10] Thus, the medical records submitted were not chronologically relevant. *See*

---

[9] "[T]he mere fact that a diagnosis is reflected somewhere in a physician's medical records does not transform it into a medical opinion." *See Van Sant v. Kijakazi*, No. 8:22-CV-684, 2023 WL 2728223 at *7 (M.D. Fla. Mar. 31, 2023) (citing *Romero v. Comm'r of Soc. Sec.*, 752 F. App'x 906, 908 (11th Cir. 2018) (per curiam) (declining to treat the results of a claimant's physical examinations and testing, and a provider's treatment recommendations, as equivalent to a medical opinion)); *Patino v. Comm'r of Soc. Sec.*, No. 6:20-cv-1607, 2021 WL 8972946 at *3 (M.D. Fla. Oct. 7, 2021) (noting that an ALJ need not treat as a medical opinion every "physical examination finding, impression, diagnosis, or treatment plan referred to in the records"); 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2).

[10] Plaintiff's reliance on *Dease v. Kijakazi*, N. 2:20-cv-394, 2022 WL 428173 (M.D. Ala. Feb. 11, 2022) in support of his argument that the Valley internal Medicine Clinic notes were chronologically relevant "where, as here, 'a medical source has provided longtime treatment to a plaintiff, even if the records at issue do not come into existence until after the ALJ's decision is rendered,'" is misplaced. (Doc. 13 at p. 7, quoting *Dease*, 2022 WL 428173 at *6). *Dease* involved a nurse who treated the plaintiff before and after the ALJ's decision and who opined in a questionnaire, which specifically noted that the questions she were answering concerned the plaintiff's impairments dating back to the alleged onset date and before the ALJ's decision that plaintiff would miss more than four days per month due to his mental health impairments and that he could rarely perform at a consistent pace without an unreasonable amount of rest periods. *Id.* at *6-7. *Dease* relied on the Eleventh Circuit's opinion in *Washington v. Soc. Sec. Admin., Com'r*,

*Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1309 (11th Cir. 2018) ("These medical records primarily consisted of these medical providers' progress notes for Hargress's treatment for her low back pain and diabetes between March and October 2015, including regular glucose blood tests, referrals for physical therapy, and diagnostic imaging of her lumbar spine (CT scan and MRI). Accordingly, they do not relate to the period before the ALJ's February 24, 2015 decision.").

**B.**     **The ALJ's Evaluation of Medication Side Effects**

In determining whether a claimant is disabled, the claimant's symptoms, including pain, are considered to the extent they are reasonably consistent with objective medical evidence and other evidence.  20 C.F.R. § 416.929(a).  The Commissioner will consider a claimant's statements about his or her symptoms and any description that claimant's medical sources or nonmedical sources may provide about how the symptoms affect the claimant's activities of daily living

---

806 F.3d 1317, 1322 (11th Cir. 2015).  In *Washington*, the Eleventh Circuit stated, "[W]e have recognized that medical opinions based on treatment occurring after the date of the ALJ's decision may be chronologically relevant."  *Id.* at 1322 (emphasis added).  Here, no such statements or opinions exist in the additional evidence submitted by Plaintiff.  Further, courts have recognized that *Washington* significantly and explicitly limited its holding to "the specific circumstances" of that case.  *See Ashley v. Comm'r, Soc. Sec. Admin.*, 707 F. App'x 939, 944 (11th Cir. 2017) ("In *Washington*, these 'specific circumstances' existed when the record showed that the medical opinion was based on a review of the claimant's medical history and the claimant's report of his symptoms during the relevant time period and there was no evidence of a decline in the claimant's condition since the ALJ's decision."); *Sorter v. Soc. Sec. Admin., Comm'r*, 773 F. App'x 1070, 1072 (11th Cir. 2019) (noting that in *Washington* the court "significantly, explicitly limited its holding to 'the specific circumstances' of that case"); *Griffin*, 723 F. App'x at 858 ("[U]nlike the [the specific circumstances] in *Washington*, the MRI report here does not specify that Dr. Barnett reviewed any of Griffin's previous medical records or that he based his findings and impressions in the 2014 MRI report on Griffin's physical condition on or before the date of the ALJ's decision."); *Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1309 (11th Cir. 2018) (noting that *Washington* limited its holding to "the specific circumstances of this case"); *Ring*, 728 F. App'x at 969 (finding doctor's evaluation did not discuss his findings in relation to plaintiff's earlier medical records and treatment, and doctor's evaluation did not appear to be based on that material); *Shoemaker v. Comm'r, Soc. Sec. Admin.*, No. 7:21-CV-01616, 2023 WL 2563730 at *5 (N.D. Ala. Mar. 17, 2023) ("[T]he Eleventh Circuit limited its holding in *Washington* to 'the specific circumstances of [that] case.'") (citation omitted).

and ability to work.  *Id*.  However, a claimant's statements about pain or symptoms alone are not enough to establish the existence of a physical or mental impairment or disability.  *Id*.; SSR 16-3p, 2017 WL 5180304 at *2 (S.S.A. Oct. 25, 2017); *Turner v. Kijakazi*, No. 1:19-CV-774, 2021 WL 3276596 at *9 (M.D. Ala. July 30, 2021) ("[A]n ALJ is not required to accept a claimant's subjective allegations of pain or symptoms.").  The regulations set out a two-step process for the evaluation of subjective complaints.  *Id*.; SSR 16-3p, 2017 WL 5180304 at *3.  To establish a disability based on testimony of symptoms, the claimant must provide evidence of an underlying medical condition and either (1) objective medical evidence confirming the severity of the alleged symptoms, or (2) evidence establishing that the objectively determined medical condition could be reasonably expected to give rise to the alleged symptoms.  *Carroll v. Soc. Sec. Admin., Comm'r*, No. 6:21-CV-00014, 2022 WL 3718503 at *12 (N.D. Ala. Aug. 29, 2022) (citing *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002)); *see also* 20 C.F.R. § 416.929(a)-(b); SSR 16-3p, 2017 WL 5180304 at *3.

"Consideration of a claimant's symptoms therefore involves a two-step process, wherein the SSA first considers whether an underlying medically determinable physical or mental impairment exists that could reasonably be expected to produce the claimant's symptoms, such as pain." *Mixon v. Kijakazi*, No. 8:20-CV-2991, 2022 WL 2816964 at *3 (M.D. Fla. July 19, 2022); 20 C.F.R. § 416.929(a)-(b); SSR 16-3p, 2017 WL 5180304 at *2-3.  Once an underlying physical or mental impairment that could reasonably be expected to produce the claimant's symptoms is established, the ALJ must then consider all of the evidence in the record to evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit the claimant's capacity for work.  SSR 16-3p, 2017 WL 5180304 at *3-4; 20 C.F.R. § 416.929(a)-(c); *Stromgren v. Kijakazi*, No. 3:21-CV-908, 2022 WL 1205347 at *5 (N.D. Fla. Mar. 11, 2022),

*report and recommendation adopted*, No. 3:21-CV-908, 2022 WL 1204519 (N.D. Fla. Apr. 22, 2022).  In doing so, SSR 16-3p and the regulations require an ALJ to consider certain factors, including: (1) daily activities; (2) location, duration, frequency, and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken; (5) treatment, other than medication, to relieve pain or other symptoms; (6) any measures used to relieve pain or other symptoms; and (7) any other factors concerning functional limitations and restrictions due to pain or other symptoms. SSR 16-3p, 2017 WL 5180304, at *8-9; 20 C.F.R. § 416.929(c)(3).

The ALJ will also consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between claimant's statements and the rest of the evidence, including the history, signs and laboratory findings, and statements by treating and non-treating sources or other persons about how the symptoms affect the claimant. 20 C.F.R. § 416.929(c)(4). "However, Eleventh Circuit case law does not require an ALJ to enumerate every factor in every decision." *Alexander v. Comm'r of Soc. Sec. Admin.*, No. 6:20-CV-01862, 2022 WL 429135 at *5 (N.D. Ala. Sept. 16, 2022) (citing *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995) (concluding that the ALJ need not cite to "particular phrases or formulations" but must provide reasons that would enable a reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole).  If the ALJ discredits a claimant's subjective statements, the ALJ "must articulate explicit and adequate reasons for doing so." *Foote*, 67 F.3d at 1561-62; *Patterson v. Kijakazi*, No. 8:21-CV-359, 2022 WL 3028058 at *3 (M.D. Fla. Aug. 1, 2022).  That is, "[w]here proof of a disability is based upon subjective evidence and a credibility determination is a critical factor in the decision, if the ALJ discredits the claimant's testimony as to his subjective symptoms, the ALJ must either explicitly discredit such testimony or the implication from the ALJ's opinion

must be so clear as to amount to a specific credibility finding." *Martinez v. Comm'r of Soc. Sec.*, No. 21-12116, 2022 WL 1531582 at *2 (11th Cir. May 16, 2022) (citing *Foote*, 67 F.3d at 1562). "Subjective complaint credibility is the province of the ALJ." *Williams v. Kijakazi*, No. 2:20-CV-277, 2022 WL 736260 at *2 (M.D. Ala. Mar. 10, 2022) (citing *Mitchell*, 771 F.3d at 782).

Plaintiff contends that the ALJ failed to make any findings regarding the side effects of his medications despite his testimony that he suffered from limitations resulting from his medication. (Doc. 13 at p. 11). Plaintiff argues that both the RFC determination and credibility determination were rendered legally insufficient by the ALJ's failure to make any findings regarding the side effects of his medication, namely Norco and Gabapentin, on his ability to perform work functions. (*Id*. at p. 13).

"In determining whether a claimant's impairments limit her ability to work, the ALJ considers the claimant's subjective symptoms, which includes the effectiveness and side effects of any medications taken for those symptoms." *Walker v. Comm'r of Soc. Sec.*, 404 F. App'x 362, 366 (11th Cir. 2010); 20 C.F.R. § 416.929(c)(3)(iv). "However, the ALJ's obligation to develop the record does not relieve the claimant of the burden of proving she is disabled." *Id*. Consequently, "the claimant must introduce evidence supporting her claim that her symptoms (including any medication side effects) make her unable to work." *Id*.; *see Ellison*, 355 F.3d at 1276 (stating that a claimant bears the burden of furnishing medical and other evidence in support of his or her claim).

Here, Plaintiff, through his attorney's questioning as to what medications he was taking, testified that he was taking Gabapentin and Norco, as well as some medication for his HIV. (Tr. 54). When asked if he had any side effects from his medication, Plaintiff answered, "They make me sleepy, drowsy. That's mostly what they do. Make me drowsy, sleepy. I have to take

it with food.  With food at nighttime ... ."  (Tr. 54).  When asked if he had spoken to his doctor about the side effects, Plaintiff said "yes" and stated that "[t]hey're trying to change my medicine so it could react with my other medicines, my HIV medicines."  (Tr. 54-55).

"[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision ... is not a broad rejection which is 'not enough to enable [the district court ... ] to conclude that [the ALJ] considered [the claimant's] medical condition as a whole.'"  *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (citation omitted).  Here, although the ALJ did not specifically mention Plaintiff's testimony about his medication side effects, the ALJ did state that the ALJ "considered all [of Plaintiff's] symptoms and the extent to which these symptoms [could] reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 416.929 and SSR 16-3p." (Tr. 21).  Those regulations provide that an ALJ will consider "[t]he type, dosage, effectiveness, and side effects of any medication" when evaluating a claimant's statements about his or her symptoms.  *See* 20 C.F.R. § 416.929(c)(3)(iv); SSR 16-3p, 2017 WL 5180304 at *6-9.  Thus, the statement that the ALJ considered all of Plaintiff's symptoms under § 416.929 and SSR 16-3p is sufficient to show that the ALJ considered the side effects of Plaintiff's medications in formulating his RFC.  *See Robinson v. Comm'r of Soc. Sec.*, 649 F. App'x 799, 802 (11th Cir. 2016) (finding that although the ALJ did not specifically mention testimony about medication side effects, the ALJ's statement that she considered all of claimant's symptoms based on the regulations requiring consideration of those side effects was sufficient to show they were considered when evaluating the claimant's subjective pain testimony); *Newton v. Kijakazi*, No. 2:21-CV-610, 2023 WL 2050021 at *8 (M.D. Ala. Feb. 16, 2023) (finding that the ALJ's statement that he considered claimant's symptoms under § 404.1529 and SSR 16-3p was sufficient to show that the ALJ

considered the side effects of claimant's medications in formulating his RFC); *Morrison v. Kijakazi*, No. 8:20-cv-1827, 2022 WL 970201 at *7 (M.D. Fla. Mar. 31, 2022) (determining that an ALJ properly assessed the claimant's symptoms where the ALJ stated she examined all of the claimant's symptoms and the extent to which those symptoms could reasonably be accepted to be consistent with the objective medical evidence and other portions of the record); *Nance-Goble v. Saul*, No. 4:20-CV-00369, 2021 WL 2401178 at *4-5 (N.D. Ala. June 11, 2021) (finding that the ALJ did not err in failing to specifically discuss the claimant's testimony about her medication side effects where the ALJ stated that he considered all of the claimant's symptoms based on the requirements of 20 C.F.R. § 416.929(c)(3)(iv)).  Further, while not specifically referencing any alleged side effects from medications, the ALJ did consider Plaintiff's complaint of fatigue. (Tr. 21, 23).  Also, the ALJ considered medical records that consistently described Plaintiff as being alert.  (Tr. 18, 22-24, 337, 351, 529, 657, 660, 689).

Moreover, Plaintiff has not shown that the alleged side effects/symptoms rendered him disabled.  *See Newton*, 2023 WL 2050021 at *8 (finding that claimant's "conclusory assertions that the ALJ erred by failing to specifically address his medication side effects and impairment symptoms [were] insufficient to show that the error, if any, [was] harmful," as he pointed to no evidence in the record showing that the symptoms/side effects were of the nature and extent that would affect his ability to perform work at a sedentary level and thus render him disabled).  Despite Plaintiff's assertion that "Mr. Sherrell alleg[ed] that side effects from his medication impact[ed] his ability to perform work functions" (Doc. 13 at p. 12), Plaintiff in fact made no such allegation either in his testimony or anywhere else in the record that his ability to work was impacted by side effects from his medication.  Plaintiff testified only that his medications made him "sleepy, drowsy" and mentioned that he took them with food at <u>nighttime</u>.  (Tr. 54).  Plaintiff did not testify

that he was sleepy or drowsy during the day, that he took naps or slept during the day, or that he had difficulty concentrating or focusing because he was drowsy.  Nor does Plaintiff cite to any medical records reflecting complaints of medication side effects.  In fact, the February 2, 2021 medical records from Valley Internal Medicine, which were considered by the ALJ, specifically stated that Plaintiff "denies any side effects from medication."  (Tr. 22, 642).  Accordingly, based upon a review of the evidence as a whole, the court concludes that Plaintiff has failed to show that the ALJ's handling of Plaintiff's testimony about his medication side effects or the taking of the medications themselves was reversible error.  *See Robinson*, 649 F. App'x at 802 (finding that the ALJ did not fail to consider claimant's medication side effects because the ALJ said that she considered all of claimant's symptoms under the regulations and because claimant's testimony regarding medication side effects was properly discredited when claimant did not consistently complain about medication side effects to doctors); *Van Sant v. Kijakazi*, No. 8:22-CV-684, 2023 WL 2728223 at *8 (M.D. Fla. Mar. 31, 2023) ("Given [the ALJ's attestation that he considered the entire record including all symptoms under the applicable regulations] the paucity of evidence buttressing the Plaintiff's claim of disabling medication side effects, and the entirety of the ALJ's decision, the Court is satisfied that the ALJ took into account the full ambit of the Plaintiff's medical condition in assessing her reported symptoms, including any medication side effects."); *White v. Soc. Sec. Admin., Comm'r*, No. 4:21-CV-00103, 2022 WL 4484607 at *12-13 (N.D. Ala. Sept. 27, 2022) (where plaintiff testified that her medications "give her 'a groggy or a fatigued type feeling,' and that she was 'constantly tired,'" the court noted that "this appear[ed] to have been an isolated and unsupported assertion" and found that the ALJ did not err in the consideration of plaintiff's "limited testimonial statement about medication side effects": "Here, White has not cited any evidence showing that she complained to her doctors of side effects from

her medications. Given this lack of objective evidence, the ALJ did not err in the consideration of White's isolated testimonial suggestion about medication side effects. ...  Further, neither White's ALJ hearing testimony nor her adult function reports contain any indication that the side effects from her medications could have caused a disabling effect anyway.") (citations omitted); *Cottrell v. Kijakazi*, No. 8:20-CV-2146, 2022 WL 4104034 at *6 (M.D. Fla. Sept. 8, 2022) (finding the ALJ did not reversibly err in not discussing the alleged side effect of sleepiness where plaintiff "during the hearing did not allege that sleepiness or drowsiness would preclude her from working—instead she stated her 'problem is getting to [her] destination'"); *Nance-Goble*, 2021 WL 2401178 at *5 (finding that claimant had not shown that the ALJ's handling of her testimony about her medication side effects was reversible error, the court noted that the claimant did not cite any objective evidence to support her contention that her medications caused drowsiness and fogginess, prevented her from thinking clearly, and led to weight gain, and that nothing in her testimony suggested that her medication side effects were severe enough to be disabling either alone or in combination with her other impairments); *Myhand v. Kijakazi*, No. 1:21-CV-48, 2023 WL 1481441 at *5 (M.D. Ala. Feb. 2, 2023).

## V.      Conclusion

After carefully and independently reviewing the record, and for the reasons stated above, the court concludes as follows:

- that Plaintiff's motion for summary judgment (Doc. 13) is due to be **DENIED**;

- that the Commissioner's motion for summary judgment (Doc. 14) is due to be **GRANTED**; and

- that the Commissioner's decision is due to be **AFFIRMED**.

A separate judgment will issue.

**DONE** this the 6th day of September 2023.

_____

**CHAD W. BRYAN**
**UNITED STATES MAGISTRATE JUDGE**